UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.

    Case No 2:10-MJ-00364
    Judge James L. Graham
    Magistrate Judge E. A. Preston Deavers

**CARLOS W. COOK,**

    **Defendant.**

### REPORT AND RECOMMENDATION

This matter is before the Court for consideration of the Government's Motion to Exclude Any Period of Delay Resulting from the Mental Incompetency of Defendant Carlos W. Cook (Doc. 18) and Defendant's Response (Doc. 19). For the reasons that follow, the undersigned **RECOMMENDS** that the Government's Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.**

Defendant Carlos W. Cook is charged by Complaint with assault on a U.S. Postal Service employee under 18 U.S.C. § 111. (Doc. 1.) Defendant was arrested on June 9, 2010. On June 10, 2010, the Court held Defendant's initial appearance. Defendant's appointed counsel requested a psychiatric exam to determine Defendant's sanity and competency. (Doc. 7.)

On June 15, 2010, the Court granted Defendant's motion to have his competency determined and ordered Defendant to submit to such an examination. (Doc. 9). The Court designated Netcare Forensic Psychiatry Center ("Netcare") to conduct Defendant's examination

and ordered that the examination occur within thirty days of July 7, 2010. (Doc. 11.)

Netcare's Dr. Daniel D. Hrinko performed Defendant's evaluation at the Franklin County Jail. On July 28, 2010, Dr. Hrinko filed his report with the Court, opining that Defendant was incompetent and recommending that he be committed to a suitable Bureau of Prisons ("BOP") facility for treatment in order to restore his competency. Both Defendant's counsel and the Government reported their agreement with Dr. Hrinko's conclusions and recommendations. (Docs. 13, 14.)

The Court's August 12, 2010 Report and Recommendation (Doc. 15) recommended a finding of incompetency and an order committing Defendant to the custody of the Attorney General for treatment in a suitable facility in an effort to restore his competency. Because neither party objected, the Court adopted the Report and Recommendation on August 18, 2010. (Doc. 16). The August 18, 2010 Adoption Order stated in pertinent part as follows:

> Based on the record this court finds by a preponderance of the evidence that defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Pursuant to 18 U.S.C. § 4241(d)(1), the defendant is hereby committed to the custody of the Attorney General, for a period not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward, and for such additional reasonable period of time for treatment until the defendant's mental condition is so improved that trial may proceed.

(August 18, 2010 Order (Doc. 16) 1–2.)

On August 24, 2010, the BOP designated Defendant to a mental health facility in Butner, North Carolina ("Butner"). This designation prompted the United States Marshals Service to transfer Defendant from the Franklin County Jail to the Butler County Jail, which is the closest jail within this District to the Lexington, Kentucky airlift that the Justice Prisoner and Alien

2

Transportation System ("JPATS") utilizes to transport inmates.  The Marshals Service transferred Defendant to the Butler County Jail on August 31, 2010.  After Defendant arrived in Butler County and had been medically cleared for airlift transport, the Marshals Service notified JPATS that Defendant was ready to begin his transport to Butner and requested a seat on an airlift.  The next scheduled airlift arrived September 23, 2010.  JPATS contacted Butner to confirm that a bed would be available for Defendant on his estimated arrival date.  Butner indicated to JPATS that no beds were available, but that Defendant would be placed on a waiting list.

On October 1, 2010, the Court learned that although Defendant remained in the custody of the Attorney General, he had not yet been transported to Butner for treatment and further evaluation.  Consequently, on October 4, 2010, the Court held a status conference with the Government, Defendant's counsel, and a representative of the United States Marshal Service to discuss the reasons for Defendant's continued presence in the Southern District of Ohio.  At the conference, the Supervisory Deputy United States Marshal advised the Court that Defendant had not been transported and could not presently be transported to Butner because the facility still had no beds available there.  The Deputy Marshal further advised that Defendant was "high on the list" for placement at Butner once a bed became available.

On October 5, 2010, Butner notified JPATS that it anticipated a bed would become available sometime between October 11 and October 15, 2010.  That same day, JPATS notified the Marshals Service via a supplement to its October 5, 2010 Manifest that an airlift would pick-up Defendant on October 6, 2010, so that Defendant could begin his transit to Butner.  Due to

3

pre-determined transportation routes,[1] and because JPATS could not pick-up Defendant until October 6, 2010, JPATS notified Butner that Defendant would not arrive at the facility until October 19, 2010. Butner agreed to hold the bed open for Defendant. Defendant arrived at and was admitted to Butner on October 19, 2010.

On October 7, 2010, the Government filed the instant Motion to Exclude Any Period of Delay Resulting from the Mental Incompetency of Defendant Carlos W. Cook (Doc. 18). The Government asks the Court to determine that any period of delay commencing with Defendant's initial appearance through the Court's August 18, 2010 Order is excluded from the speedy indictment clock under 18 U.S.C. §§ 3161(h)(1)(A) and (D). In addition, the Government asks this Court determine that any period of delay commencing with the Court's August 18, 2010 Order "through that time, if ever, [D]efendant becomes mentally competent" is excluded under 18 U.S.C. § 3161(h)(4). (Gov't.'s Mot. to Exclude 3.) Alternatively, the Government asks the Court to determine that any delay in transporting Defendant to a suitable BOP facility is reasonable and excludable under 18 U.S.C. §§ 3161(h)(1)(A) and (7)(A).

Defendant filed his Response (Doc. 19) on October 8, 2010. Ultimately, Defendant agrees that the periods of delay through the October 4, 2010 Conference are excluded from the speedy indictment clock.[2] Defendant, however, submits that the delay accruing after the Court's August 18, 2010 Order should be excluded under 18 U.S.C. § 3161(h)(1)(F) rather than under 18

---

[1] JPATS' transportation routes can vary depending upon the numbers of inmates that need to be transferred. In this case, as is typical, JPATS first transported Defendant to Oklahoma. JPATS then put Defendant on the next available airlift to Atlanta, Georgia on October 13, 2010. From there, JPATS placed Defendant on the next available bus traveling to Butner, which departed from Atlanta and arrived at Butner on October 19, 2010.

[2] Defendant's Memorandum is silent with regard to the delay occurring after the October 4, 2010 Conference.

4

U.S.C. § 3161(h)(4).

## I.

The Speedy Trial Act ("Act") generally provides time periods within which a defendant must be indicted and brought to trial.  Under the indictment prong of the Act, the Government has thirty days to indict an individual after arresting him.  18 U.S.C. § 3161(b).  This thirty-day period is often referred to as the "speedy indictment clock."  Because "there are valid reasons for greater delay in particular cases, . . . [t]o provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time."  *Zedner v. United States*, 547 U.S. 489, 497 (2006) (citing 18 U.S.C. § 3161(h)).  These periods of delay are enumerated at § 3161(h), which reads in pertinent part as follows:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed . . . :
>
> > (1) Any period of delay resulting from other proceedings concerning the defendant, including, but not limited to–
> >
> > > (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
> > >
> > > \*    \*    \*
> > >
> > > (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
> > >
> > > \*    \*    \*
> > >
> > > (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

5

>     \*     \*     \*
>
> (4)    Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.
>
>     \*     \*     \*
>
> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.
>
>     \*     \*     \*

18 U.S.C. § 3161(h).

### III.

**A.    Initial Appearance through August 18, 2010**

The parties do not dispute that 18 U.S.C. §§ 3161(h)(1)(A) and (D) operate to exclude the time commencing with Defendant's initial appearance on June 10, 2010, through the Court's August 18, 2010 Order from the speedy indictment clock. Defendant submits that during this block of time, only the day of Defendant's initial appearance is not excluded. Defendant explains that:

> The speedy indictment clock began running on the date of Cook's initial appearance, but was tolled the same day with the filing of his motion for a competency evaluation. This motion was timely ruled on by this Court five days later and Dr. Hrinko's report was also timely filed. Once Dr. Hrinko's report was filed, this Court's report and recommendation finding that Cook [w]as incompetent as well as the order adopting the report and recommendation were also timely. Consequently, from Cook's date of arrest through the August 18,

6

2010 order, only one day expired on the speedy indictment clock. (Def.'s Response 4.)  The undersigned finds that this entire block of time, including the day of Defendant's initial appearance, is excluded under 18 U.S.C. §§ 3161(h)(1)(A) and (D) in computing the time within which an indictment must be filed.  Federal Rule of Criminal Procedure 45(a)(1)(A) operates to exclude the "day of the event that triggers the period" from computation.  Fed. R. Civ. P. 45(a)(1)(A); *see United States v. Bond*, 956 F.2d 628, 632 (6th Cir. 1992) (applying Rule 45(a) to extend the ten-day period).  Thus, because June 10, 2010, is the day that would "trigger" the speedy indictment clock, it is excluded.  Accordingly, the undersigned **RECOMMENDS** that the Court determine that, from the date of Defendant's arrest through August 18, 2010, no days expired on the speedy indictment clock.

B.    **August 18, 2010, through Restoration of Competency**

The parties dispute whether the block of time commencing with the Court's August 18, 2010 Order, and continuing through the time, if ever, the Court finds Defendant to be mentally competent, is excluded under § 3161(h)(4).  The Government submits that because this period of delay is attributable to Defendant's mental incompetence, § 3161(h)(4) controls and operates to exclude the entire time.  Defendant does not explicitly disagree with the conclusion that the delay is attributable to the fact that Defendant is mentally incompetent.  (*See* Def.'s Response 5 (acknowledging that Defendant "had been determined to be incompetent at this juncture so it might be convenient to point to § 3161(h)(4) and exclude all of this time because of this status")).  Instead, Defendant characterizes this block of time as a transportation delay and maintains that the language of § 3161(h)(1)(F) controls whether the time is excludable. Defendant cites to *United States v. Turner*, 602 F.3d 778 (6th Cir. 2010), and *Bloate v. United States*, 130 S.Ct. 1345 (2010), for support.

7

In addition to *Bloate* and *Turner*, the undersigned finds *United States v. Tinkleburg*, 579 F.3d 589 (6th Cir. 2009), *cert. granted*, 78 U.S.L.W. 3745 (U.S. Sep. 28, 2010), instructive. In *Tinkleburg*, the United States Court of Appeals for the Sixth Circuit clarified how to calculate certain periods of delay resulting from events prior to trial. With regard to transporting a Defendant to and from competency evaluations, the Court noted the conflict between § 3161(h)(1)(A), which "appears to exclude all time during which a defendant's competency evaluation and determination is pending," and § 3161(h)(1)(F), which "provides that any delay caused by the transportation of a defendant 'to and from places of examination or hospitalization' that is longer than ten days is 'presumed to be unreasonable.' " 579 F.3d at 596. The Court explained that the only way to avoid this internal statutory conflict "is to read § 3161(h)(1)(F) as a specific exception to the general rule announced in § 3161(h)(1)(A)." *Id*. Thus, the Court concluded that "all delays caused by proceedings to determine a defendant's competency are excluded, except for the time during which the defendant is supposed to be in transit, which is presumptively unreasonable if longer than ten days." *Id*. (citations omitted). The Court, in considering how many non-excludable transport days had elapsed, utilized the date of designation, November 10, 2005, as the start date rather than the date of the order committing defendant to the custody of the Attorney General for evaluation.[3] Thus, the Court defined the relevant period under § 3161(h)(1)(F) to be from November 10, 2005, through the date the defendant arrived at the MCC in Chicago, November 30, 2005. *Id*.

---

[3]On November 2, 2005, the *Tinklenburg* district court magistrate judge ordered the defendant "committed to the custody of the Attorney General for . . . placement in an appropriate facility for psychological and psychiatric evaluation . . . ." (Case No. 1:05-cr-00239, November 2, 2005 Order (Doc. 14)); *Tinklenburg*, 597 F.3d at 591. The magistrate judge did not thereafter issue a second order directing transport. On November 10, 2005, the defendant was designated to the Metropolitan Correctional Center ("MCC") in Chicago. 597 F.3d at 597.

*Bloate* is significant to this Court's analysis because in *Bloate*, the United States Supreme Court rejected an interpretation of the Speedy Trial Act that would render a provision of the Act a nullity.  *See* 130 S.Ct. at 1353 n.9.  More specifically, the Supreme Court rejected a significantly expansive interpretation of § 3161(h)(1) because such an interpretation failed to consider and give full effect to the ends of justice continuance under § 3161(h)(7).  *Id*. at 1352–54.

In *Turner*, the Sixth Circuit relied on *Bloate* to confirm *Tinklenberg's* holding that " 'delay in transporting a defendant to a mental competency examination beyond the ten day limit imposed by § 3161(h)(1)(F) is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable.' "  602 F.3d at 782 (quoting *Tinklenberg*, 579 F.3d at 596).  Applying this construction, the *Turner* Court found that "[t]he relevant period under § 3161(h)(1)(F) began with the 'order directing . . . transportation' and ended with the 'defendant's arrival at the destination.' "[4]  *Id*. (quoting 18 U.S.C. § 3161(h)(1)(F)).  More than sixty days passed from the June 8 order of transportation and the defendant's arrival to the facility on August 12, 2005.  *See id*. at 783.  The Court held that the government's vague reference to the " 'difficulty suffered by the facility and by the United States Marshal Service in effectuating timely evaluation and transportation to and from the facility,' " did not suffice to rebut the presumption of unreasonableness for delays in excess of the ten days referenced in § 3161(h)(1)(F).  *Id*. (quoting district court's Doc. 30 at 3).  The *Turner* Court explicitly rejected the government's arguments that the defendant failed to identify

---

[4]The district court's June 8, 2005 order stated:  "Further, as part of this Order, the United States Marshal and the Bureau of Prisons are hereby directed to conduct the transportation and the evaluation of the defendant in an appropriate, expeditious manner."  *Id*. at 783 (quoting the district court's June 8, 2005 order, Doc. 12 at 2).

the date an institution was designated or the date he was actually transported. *Id*. at 784. The Court explained that the operative date under § 3161(h)(1)(F) is "the date of an order directing such transportation," not the date of designation, because "[t]he statute says nothing about the designation of a specific institution; it only refers to the 'transportation of any defendant . . . to and from places of examination or hospitalization.' "[5] *Id*. (quoting § 3161(h)(1)(F)). The Court noted that "[a]s to the concept of a second judicial order, a court *might* choose to issue one order directing an evaluation, then, once the government has picked a facility for the defendant's evaluation, issue another order directing the government to transport the defendant there—an approach that might eliminate the countable-delay problems."[6] *Id*. The Court then rejected the notion that a second order was required in the case before it because "the court's first order covered evaluation *and* transportation." *Id*.

Against this backdrop, this Court must first consider whether § 3161(h)(1)(F) applies to the time in which a defendant is transported to and from a place of examination and treatment following a court's determination that the defendant is incompetent. The undersigned agrees with Defendant, that § 3161(h)(1)(F) operates as a specific exception to the general rule

---

[5]Thus, the *Turner* Court implicitly disagreed with the *Tinklenberg* Court's utilization of the designation date as the commencement date for the relevant period under § 3161(h)(1)(F). The Court acknowledged, though, that in the absence of a transportation order, one solution would be to start the clock at the start of the defendant's trip or on the date of the agency's internal transportation order, which is the approach the United States Court of Appeals for the Seventh Circuit follows. *Id*. at 785 (citing *United States v. Garrett*, 45 F.3d 1135, 1139–40 (7th Cir. 1995)). The Court found it unnecessary to pass on the propriety of this solution, however, because "the district court's June 8 order explicitly directed the Marshals Service to transport Turner." *Id*.

[6]The Court again noted that an "order directing examination need not direct transportation. If the government fears that a defendant's placement could take some time, it is free to suggest that the court not issue an order directing transportation at that point." *Id*. at 785.

announced in § 3161(h)(4) in the same way it operates as a specific exception to the general rule announced in § 3161(h)(1)(A).[7] Just as § 3161(h)(1)(A) appears to exclude all time during which a defendant's competency evaluation and determination is pending, § 3161(h)(4) appears to exclude all periods of delay attributable to a defendant's mental incompetence. Nothing in § 3161(h)(1)(F) limits its application to transportation prior to a determination of incompetency. Instead, § 3161(h)(1)(F) "expressly limits the reasonableness of the transportation period to ten days." *Tinklenberg*, 579 F.3d at 596 (citing *United States v. Noone*, 913 F.2d 20, 25 n.5 (1st Cir. 1990)). Thus, without reading § 3161(h)(1)(F) as a specific exception, conflict arises between § 3161(h)(1)(F) and § 3161(h)(4). Reading § 3161(h)(1)(F) as a specific exception, all delays attributable to a defendant's mental incompetency are excluded, "except for the time during which the defendant is supposed to be in transit, which is presumptively unreasonable if longer than ten days." *Id*. (citations omitted).

Next, the Court must consider the relevant period under § 3161(h)(1)(F). Subsection (h)(1)(F) provides that the starting point is "the date of an order of removal or an order directing such transportation." 18 U.S.C. § 3161(h)(1)(F). Unlike the order at issue in *Turner*, here, the Court's August 18, 2010 Order does not contain any language directing transportation. Nor did

---

[7]The undersigned acknowledges that the Sixth Circuit, in *United States v. Gurley*, Nos. 89-2384, 89-2418, 90-1071, 1990 WL 177318 (6th Cir. Nov. 13, 1990), excluded from the speedy trial clock the entire sixteen-month delay due to the defendant's mental incompetency under § 3161(h)(4). 1990 WL 177318, at *4–6. The *Gurley* Court, however, had no evidence before it that the defendant was transported during this time. Thus, the Court had no reason to consider the interplay between § 3161(h)(1)(F) and § 3161(h)(4). Further, *Gurley*, an unreported case with limited precedential value, preceded *Tinklenberg*, *Bloate*, and *Turner*, and therefore, did not have the benefit of those Courts' analyses. For these same reasons, the Seventh Circuit's exclusion pursuant to § 3161(h)(4) of the entire period that the defendant had been adjudicated incompetent in *White v. United States*, 273 Fed.Appx. 559 (7th Cir. 2008), is distinguishable.

11

the Court issue a second order of transportation. *Cf. Turner*, 602 F.3d at 784. Defendant's contention that the Court's August 18, 2010 Order constitutes "an order of removal" is unavailing for several reasons. (Def.'s Response 5.) First, § 3161(h)(1)(F)'s "order of removal" language refers to an order removing a defendant from one district to another. *See* 18 U.S.C. §§ 3161(h)(1)(E) and (F) (referencing "the removal of any defendant from another district . . ." and "the transportation of any defendant from another district . . .") Second, the August 18, 2010 Order does not contain the words "remove" or "removal" or otherwise utilize any removal language. Finally, the Court's August 18, 2010 Order is virtually indistinguishable from the *Tinklenburg* November 2, 2005 commitment order, which the *Tinklenberg* Court considered neither an order of removal or an order directing transportation. *Compare Tinklenberg*, Case No. 1:05-cr-00239, November 2, 2005 Order (Doc. 14) (committing the defendant "to the custody of the Attorney General for . . . placement in an appropriate facility for psychological and psychiatric evaluation . . .") *with Cook*, August 18, 2010 Order (Doc. 16) 1–2 (committing Defendant Cook "to the custody of the Attorney General . . . [for evaluation] and for . . . treatment . . ."). Here, the Court has not yet issued a judicial order of transportation. As noted above, in the absence of a transportation order, the *Tinklenburg* Court utilized the designation date as the starting point for calculating transportation time. *See* 579 F.3d at 597. The *Turner* Court, however, rejected this approach, finding that the designation date is irrelevant under § 3161(h)(1)(F). *See Turner*, 602 F.3d at 784 ("The statute says nothing about the designation of a specific institution . . . ."). The undersigned finds appropriate the solution that the *Turner* Court acknowledged, but declined to consider. *See id*. at 785. That is, in the absence of an order of transportation, the clock starts on the date a defendant commences his or her transit to the designated facility. *See id*.; *see also* 18 U.S.C. § 3161(h)(1)(H) (excluding "delay *resulting from*

12

*transportation* of any defendant . . . to and from places of examination or hospitalization" (emphasis added)); *Garrett*, 45 F.3d at 1139 ("Where, as here, there is no order, *it is the period of transportation that matters* for purposes of the Speedy Trial Act . . . ." (emphasis added)); *Tinklenberg*, ("[A]ll delays . . . are excluded, *except for the time during which the defendant is supposed to be in transit . . . .*").

Here, Defendant began his transportation to Butner on October 6, 2010, and arrived at Butner on October 19, 2010. Thus, the relevant period under § 3161(h)(1)(F) is from October 6 through October 19, 2010, which consists of fourteen days. October 6, 2010, is excluded from computation pursuant to Rule 45(a)(1)(A). *See* Fed. R. Civ. P. 45(a)(1)(A); *Bond*, 956 F.2d at 632. Therefore, although fourteen calendar days passed until Defendant arrived at Butner, after subtracting October 6 and the ten days excludable under § 3161(h)(1)(F), only three transportation days are presumed to be unreasonable. The Government filed its Motion to Exclude (Doc. 18) on October 7, 2010, well before Defendant arrived at Butner. Consequently, the undersigned **RECOMMENDS** the conclusion that these three days are presumptively unreasonable. The undersigned withholds a recommendation regarding excludability of these three days in order to allow the Government the opportunity to present rebutting evidence to explain the additional delay.

## IV.

The undersigned **RECOMMENDS** that the Government's Motion to Exclude (Doc. 18) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** the conclusion that, from the date of Defendant's arrest through August, 18, 2010, no days expired on the speedy indictment clock. In addition, because Defendant's transit to Butner took thirteen days, the undersigned **RECOMMENDS** the conclusion that three of

these transit days are presumptively unreasonable under § 3161(h)(1)(F). The undersigned withholds a recommendation of excludability in order to allow the Government the opportunity to present rebutting evidence to explain the additional delay. Finally, with regard to the remainder of the days, commencing with the Court's August 18, 2010 Order and continuing through that time, if ever, the Court finds Defendant mentally incompetent, the undersigned **RECOMMENDS** the determination that § 3161(h)(1)(F) is a specific exception to § 3161(h)(4), such that all delays attributable to Defendant's mental incompetency are excluded, except for the time during which Defendant is supposed to be in transit, which is presumptively unreasonable if longer than ten days.

## V.

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

14

magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

<u>October 26, 2010</u>                                              <u>      /s/ *Elizabeth A. Preston Deavers*      </u>
                                                                                    Elizabeth A. Preston Deavers
                                                                                    United States Magistrate Judge